

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Mr. Sheppard:

Opinion No. O-6812

Re: Authority of the Comptroller
of Public Accounts to transfer
the balance carried in the Treas-
urer's Suspense Account known as
the "Mary McNamara Suspense Account."

Your letter requesting an opinion from this depart-
ment upon the above subject-matter, accompanied by a letter
prepared by Mr. W. C. Stallings, Auditor, is before us. Mr.
Stallings' letter is as follows:

"At your request, I have endeavored to ob-
tain the history of the items held in the De-
partmental Suspense under the classification
of 'Sundry Suspense' as carried by the Depart-
ment Cashier. I am attaching a schedule set-
ting out the detail in this account showing a
balance of $913.87 as carried by the department
bookkeeper and in the Suspense balance of the
State Treasurer.

"I have talked to various members of the
department who might have some idea as to the
origination of these items and why they were
deposited to this suspense account.

"The first item, according to Mr. J. W.
Byrne, was in payment of Motor Fuel Tax by the
Auto Supply Company of Laredo, Texas, in the
amount of $23.85. According to the informa-
tion gathered this was a refundable item, but
for some reason the act of refunding this to
the tax-payer was never executed. The ledger
sheet carried by the Cashier shows that this

Honorable Geo. H. Sheppard - page 2

item was deposited to Suspense April 25, 1931.

    "The second item is listed under the name
of Dan Moody in the amount of $5.00, and accord-
ing to the Cashier's suspense ledger this item
was deposited to Comptroller's Suspense account
September 30, 1931. This item, according to
information furnished by Mr. C. D. Watts and
Mr. Jack Walston, was an anonymous payment re-
ceived by the governor's office at the time the
Honorable Dan Moody was Governor of Texas. The
$5.00 was deposited with the Comptroller for
disbursement to funds, and the Comptroller had
no way of determining the fund to which this
amount should be deposited.

    "The third item in this account, amounting
to $882.26, is listed as 'unknown.' The records
in the Cashier's Division show that this covers
four deposits to the suspense account as shown
on the attached schedule. The information gather-
ed from members of the department who were employ-
ed before and at the time Mr. Sheppard took office
is that these are fee items collected under the
Houston Terrell administration.

    "The total of these items amounts to $916.11
and is carried thusly on the cashier's control
sheets as 'Mary McNamara Suspense.' Mr. Watts
tells me that in 1937 the Assistant State Auditor
in making the annual audit of the Cashier's of-
fice recommended a credit adjustment to this ac-
count of $2.24, which reduced the account balance
$2.24 and since that time it has been carried as
$913.87.

    "Mr. Watts informs me that the items compos-
ing this account were carried in a make-shift
suspense account before any law was passed by
the legislature governing suspense items. It
was deposited under the classification of 'Houston
Terrell Special' upon the approval of Mr. Terrell,
and Mr. Sheppard inherited it in that fashion when
he took office.

    "Within the past few years the State Auditor
has recommended that this account be cleared to

the General Fund. Special effort was made
by the Assistant State Auditors in their
recently completed investigation of this
department to have this account cleared to
the General Fund. On February 19th of this
year a conference was held between Mr. Gar-
land Barcus, Assistant State Auditor, Mr.
Bob Calvert, Department Statistician, and
myself, and it was agreed the $913.87 would
be the proper amount to clear."

In Opinion No. O-948, addressed to Honorable
Tom C. King, State Auditor, this department, construing
Article 4364, Vernon's Annotated Civil Statutes, said:

"The reading of the above quoted Arti-
cle clearly indicates that the procedure
for final payment into the State Treasury
is by the issuance of a deposit warrant.
Such deposit warrant is issued to the par-
ticular fund to which the money goes. It
is true, then, that until the fund to which
the money should go is determined the de-
posit warrant to that fund cannot be is-
sued for such money. For this reason, it
is our opinion that in a case where money
is paid to one of the departments of the
State, and there is a question as to which
particular fund said money should go, the
same may properly be paid into the Suspense
Fund because said money cannot be placed in-
to the proper fund until a deposit warrant
for such money is drawn. Only then is the
money paid into the Treasury. While the
particular destination of the fund is in
question, even though there is no question
as to the State's right to the money, we
feel that the money comes within the cate-
gory of 'money which is awaiting the time
when it can finally be taken into the
Treasury' as set out in Article 4388. You
are, therefore, advised that in cases
where there is an actual doubt as to the
particular fund to which a money should go

said money may properly be placed in the
Suspense Fund by the head of a department."

What we said there rules your case.

Mr. Stallings' analysis of the Mary McNamara Suspense Account does not show that the fund in that account belongs to the State, but on the contrary, tends to show that it belongs to others. In Opinion No. O-5844, addressed to Honorable Jesse James, State Treasurer, we made the same quotation as that above, and added:

"In view of the rule there announced, it is the opinion of this Department the items mentioned by you whose source and status as State property are unknown, must remain in the Suspense Account until in some way the proper status and disposition thereof are ordered by a court of competent jurisdiction, or by legislative act." (Emphasis supplied)

Since it has not been determined that the Mary McNamara Suspense Account belongs to the State, it cannot be covered into the State Treasury. Moreover, even though it were undisputed that the Fund does belong to the State, unless it has been determined further as to which fund the same should be credited, it may not be deposited in the State Treasury upon the Comptroller's warrant.

Trusting that what we have said sufficiently answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS-MR

